UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TINA D. GREEN,                                              :
                              Plaintiff,                    :  **MEMORANDUM DECISION**
                                                            :  **AND ORDER**
              - against -                                   :
                                                            :  15-CV-3453 (BMC)
CAROLYN W. COLVIN, Acting Commissioner                      :
of Social Security,                                         :
                                                            :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks review of the final decision of the Acting Commissioner of Social Security, following two hearings before an Administrative Law Judge ("ALJ"), that she is not disabled for the purpose of receiving Supplemental Security Income ("SSI") benefits. For the reasons set forth below, plaintiff's motion for judgment on the pleadings is granted, and defendants' motion is denied.

Plaintiff filed an application for SSI on March 9, 2011, claiming that she was disabled and unable to work since November 1, 2010, due to osteoarthritis. Following an initial denial of SSI benefits, the case was remanded back to the ALJ by the Appeals Council to determine whether plaintiff had substantial gainful activity such that she could perform past relevant work, and whether work existed in the national economy consistent with her residual functional capacity ("RFC"). The ALJ was required to obtain supplemental evidence from a vocational expert ("VE") based on hypothetical questions reflecting the specific capacity/limitations established by the record as a whole. In addition, the ALJ was required to offer plaintiff an opportunity for a hearing and take further action needed to complete the administrative record. Plaintiff underwent a second consultative examination and testified *pro se* at a hearing before the

ALJ. A VE also testified as to the availability of jobs in the national economy based on hypotheticals submitted by the ALJ.

On review, the parties dispute whether the ALJ erred in determining plaintiff's RFC, which he found to be as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that she can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; she can occasionally stop, crouch or kneel but never crawl; she can occasionally push and pull with the left hand; she can occasionally perform rotation, flexion or extension of the neck; she can occasionally perform forward reaching, overhead reaching and handling with the left arm/hand, and; she must be allowed to be off-task 5% of the day, in addition to regularly scheduled breaks.

The ALJ's formulation of the plaintiff's RFC after the Appeals Council remanded is not supported by substantial evidence. To begin, there is not substantial evidence to support the finding that plaintiff could ever lift the weight required to perform light work. See 20 C.F.R. § 404.1567(b). The 2011 consultative examination performed by Dr. Mahendra Misra stated that plaintiff had "no problem in standing, sitting, or walking" and was capable of lifting a weight of "5 to 10 pounds from her right shoulder." The 2011 report did not state whether plaintiff was capable of lifting any weight from her left shoulder.

By 2013, however, the same consultative examiner found that plaintiff was not capable of lifting or carrying any weight, but could sit for 15 minutes, stand for 30 minutes, or walk for 45 minutes total in an 8-hour workday. In fact, Dr. Misra stated in 2013 that, while the diagnosis was entirely clinical, he found that her neck was "absolutely rigid with hardly any movement actively or passively" and stated that plaintiff "will not be able to do any active job at all like prolonged standing, sitting, walking, crawling, crouching, bending, climbing, lifting, pulling, or pushing." Yet the ALJ did not include any weight or lifting limitation in plaintiff's RFC.

There are several additional errors here. The law does not permit an ALJ to reject the results of a clinical examination merely because the plaintiff has not complained enough, particularly when the level of grievance an ALJ would expect is as subjective as the pain one experiences. The legal principles of the regulations point to the opposite: it is the subjective opinions and testimony that must be supported by objective clinical findings. An ALJ weighs the credibility of the claimant's testimony in light of the other evidence on the record, see Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010), and considers the extent to which the claimant's symptoms can be reasonably accepted as consistent with the medical evidence, see 20 C.F.R. § 404.1529(a). Further, "[j]ust because plaintiff's disability went untreated does not mean [she] was not disabled." Shaw v. Chater, 221 F.3d. 126, 133 (2d. Cir. 2000).[1] Nor is a conservative treatment regime substantial evidence that plaintiff is not physically disabled. Id.; Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008). In other words, it is the clinical evidence that can refute a plaintiff's subjective complaints; it is not that a plaintiff's subjective complaints are necessary to accept the clinical evidence.

As to the medical evidence, even had the clinical findings in the 2013 report conflicted with those in 2011 or with other findings in the 2013 report, an ALJ should not reject a physician's disability opinion based "solely" on internal conflicts in that physician's clinical findings. See Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998). Conversely, an ALJ should not use a physician's nebulous expectation that plaintiff "may" be capable in the future of doing "lighter work," as used by a doctor, as evidence that plaintiff is capable of performing "light work," as defined by law. See 20 C.F.R. § 404.1546; Dowdy v. Barnhart, 213 F.Supp.2d 236,

---

[1] Where, as here, the claimant is applying solely for SSI, has no work history, and has lived in a shelter in the past, there is some reason to believe that her lack of consistent medical treatment, or reliance on over-the-counter medication versus prescription medication, was due to an inability to afford medical treatment.

3

246 (E.D.N.Y. 2002) ("The ALJ is solely responsible for deciding a plaintiff's residual functional capacity.").

The result of the above errors is that the findings in the ALJ's decision became circular. The ALJ discounted plaintiff's 2013 testimony as to the intensity, persistence, and limiting effects of her symptoms. The ALJ found that plaintiff's testimony of "drastically reduced functioning" was not justified by plaintiff's sporadic treatment, use of over-the-counter medication, and "highly functional activities of daily living" based on plaintiff's function report (undated, but available to the ALJ for his first decision in 2012), when that evidence was combined with "minimal" clinical findings. In so deciding, the ALJ used 2011 clinical and testimonial evidence as support, and dismissed the clinical findings in Dr. Misra's 2013 consultative examination.

Then, having discounted plaintiff's testimony, the ALJ discounted Dr. Misra's 2013 consultative examination, which included a Medical Source Statement of Ability to Do Work-Related Activities that detailed plaintiff's abilities and limitations in the context of an eight-hour work day and five-day work week. The ALJ did not afford the 2013 report more weight because, although the "range of motion in the cervical spine was greatly restricted and there was a significant amount of cervical muscle spasms," the "record show[ed] no increase in treatment or complaints to corroborate this increase in clinical findings." The ALJ subsequently gave Dr. Misra's 2013 report little weight.

Having discounted the 2013 report, the ALJ then gave "some weight" to the medical source statement of Dr. Misra in 2011, who opined that plaintiff would be able to perform a "lighter kind of work that involved no heavy lifting." The ALJ found this statement was supported by the 2011 clinical findings, including "a full range of motion in both shoulders and

cervical spine, good finger dexterity and only mildly reduced grip strength, no muscle spasms or atrophy, and no reflex, sensory or motor deficits." The ALJ did not, however, give greater weight to the 2011 opinion, because Dr. Misra had not assessed "specific, function-by-function limitations."

The ALJ thus discounted each opinion or report based on the non-existence of supporting information when, in fact, the supporting information could be found in other portions of the record. Plaintiff did testify to her difficulties in daily activities, which the ALJ summarized, and she reported these difficulties to her physicians. The 2013 consultative examination did support plaintiff's testimony, without contradicting the 2011 report, and it did provide a function-by-function assessment as to plaintiff's abilities in a full-time work environment. Each finding that discounted one portion of evidence fed into one another, such that it is unclear what, if anything, the ALJ took from the supplemental evidence in the record in 2013, obtained after the case was remanded by the Appeals Council. It appears the ALJ, having determined the picture of plaintiff's abilities before the remand, discarded the pieces of the puzzle he received after the remand that did not fit with that conclusion. Therefore, the ALJ's decision did not comply with the ALJ's obligation to consider all of the relevant medical and other evidence. See 20 C.F.R. § 404.1545(a)(3); see also Genier, 606 F.3d at 50.

Plaintiff's [10] motion for judgment on the pleadings is granted and defendant's [12] cross-motion is denied. The case is remanded so that the ALJ may properly determine whether plaintiff is disabled in light of the lifting limitations found in the 2011 and 2013 reports, the function-by-function assessment found in the 2013 Medical Source Statement of Ability to Do Work-Related Activities, plaintiff's 2013 testimony regarding symptoms as supported by the 2013 report and medical records, and Dr. Misra's 2013 clinical findings and opinion as to

plaintiff's abilities. Although the record evidences that plaintiff was suffering severe limitations in 2013, it is unclear whether jobs exist in the national economy that plaintiff can perform considering her corrected RFC, age, education, and work experience.[2]

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
January 21, 2016

---

[2] The VE was given a hypothetical wherein plaintiff was not able to use the left non-dominant arm at all. The VE responded that there were no jobs because it would be "unskilled work and it's tough to do when you're trying to match a one-arm person into unskilled work." The VE, however, may have been operating under the ALJ's instruction to only give jobs considered to be "light work," a similarly confusing decision by the ALJ in this case.